# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA ROSARIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11 C 456 |
| | ) | |
| CITY OF CHICAGO, RAFAEL MAGALLON, | ) | |
| ANGEILLY LOPEZ, JASON BALA, | ) | |
| WILLIAM O'BRIEN, ELAINE VABAKOS, | ) | |
| ANGELIQUE CASEY-MARTINEZ, | ) | |
| and WILLIAM CRAWFORD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW  F. KENNELLY, District Judge:

Sandra Rosario has sued the City of Chicago and seven Chicago police officers, claiming that the officers arrested her without probable cause and made false statements that caused her to be charged with a crime.  Rosario has asserted two claims under 42 U.S.C. § 1983 and four state-law claims against the officers.  She has also asserted the state-law claims against the city via the doctrine of *respondeat superior*.  All of the defendants now seek summary judgment in whole or in part.  For the reasons stated below, the Court grants defendants' motion in part and denies it in part.

### Background

On a motion for summary judgment, the Court construes all facts favorably to the nonmoving party and makes reasonable inferences in that party's favor.  *Eaton v. Ind.*

*Dep't of Corr.*, 657 F.3d 551, 552 (7th Cir. 2011).  The Court takes the following facts from the parties' memoranda of law and statements of uncontested facts.

Although the parties vigorously contest the details of what occurred, they agree on the following outline of the events at issue.  On the evening of August 11, 2010, Rosario and Eduardo Gonzalez ("Eduardo") went to a restaurant near the intersection of Armitage and Sawyer in Chicago.  At some point after leaving the restaurant, Rosario saw and confronted Maribel Gonzalez ("Maribel").[1]  Rosario and Gonzalez then got into Rosario's car and drove away.  They were soon stopped by several Chicago police officers, who arrested both of them and took them to the Fourteenth District police station, where Rosario was strip searched.  Rosario was then taken to a different police station and held overnight.  The next morning, she was taken to the Cook County Criminal Court and charged with possession of a controlled substance with intent to deliver.  She posted bond and was released.  The charge against her was later amended to a charge of possession of a controlled substance.  At a preliminary hearing on September 2, 2010, the charge was dismissed.

**1.    Rosario's description of the events**

According to the testimony of Rosario and Eduardo, the events were as follows.  Immediately upon leaving the restaurant, Rosario saw Maribel, who she believed owed money to her sister.  The two had an argument, but Rosario did not touch Maribel.  Rosario then got in her car with Eduardo and drove several blocks before being stopped

---

[1]Although Rosario testified that she only knew the woman she approached by her nickname, "Speedy," a reasonable jury could infer from the evidence that "Speedy" is Maribel Gonzalez.

by multiple police cars.  Several officers, including Rafael Magallon, pulled her out of the car.  Magallon, while ostensibly patting her down, groped her breasts and buttocks.  He then handcuffed her and put her in a car with Officers Angeilly Lopez and Jason Bala, who took her to the police station.

After arriving at the station, Rosario was placed in a room with a metal bench.  After about fifteen minutes, Magallon and Lopez walked into the room.  Lopez was carrying a baseball bat.  The officers told Rosario to let them know if she was carrying any contraband and that she was about to be strip searched.  Magallon and Lopez then left the room, and Officer Angelique Casey-Martinez entered.  She told Rosario to disrobe, which Rosario did.  Casey-Martinez also told Rosario to remove the tampon she was wearing because she was menstruating.  The officer performed a visual cavity search during which she did not touch Rosario.  She then left the room (presumably after Rosario had put her clothes back on), carrying Rosario's tampon, and she told Magallon and Lopez that Rosario did not have any drugs on her.

Rosario then waited in the room for approximately two hours with her hands cuffed behind her back.  She eventually banged on the door because she was anxious about missing work in the morning.  At that point, Magallon and Lopez opened the door and came into the room.  Rosario testified that Magallon grabbed her by the arms and "flung me on the bench and told me to sit the fuck down, to shut the fuck up, that I knew the motherfuckin' system; and he grabbed his hand and he slapped me so hard across my face."  Rosario Dep. at 66:4-8.  Lopez, still carrying a bat, watched this occur but did not touch Rosario.  The officers then left her alone for another period of time, after which Lopez took her out of the room to be fingerprinted by an officer whose name she

3

did not know but later determined to be William Crawford. They then transported her to another facility that had overnight accommodations for women, where Officer Elaine Vabakos was responsible for her. In the morning, Rosario was taken to the criminal court building.

## 2.    Defendants' description of the events

Magallon and Lopez testified that they were patrolling in the Fourteenth District when a person who "wished to remain anonymous" told them that a Hispanic female and a bald male in a car were engaging in a narcotics transaction near the intersection of Armitage and Sawyer. The person described the car and gave the officers a license plate number. Magallon testified that he and Lopez got into an unmarked vehicle and drove to the intersection. They soon saw a car arrive that matched the description. Lopez testified that he witnessed a situation involving the car's occupants that looked to him like a narcotics transaction, but the portion of his deposition included in the record does not make clear precisely what he contends he saw.

The officers testified that they then saw Rosario exit the car, approach Maribel while yelling at her, and slap her on the face. Rosario then got back in the car and drove away. Believing that a battery had occurred, Magallon followed her in his unmarked vehicle and radioed Bala, who was patrolling nearby along with Officer William O'Brien. Once their car was behind Rosario's, O'Brien and Bala activated their siren, and Rosario stopped her car.

At that point, Magallon and Lopez drove back to Armitage and Sawyer, picked up Maribel, and drove her to Rosario's car for a "show-up." When they arrived, Magallon saw that Rosario and Eduardo were bent over the hood of O'Brien and Bala's car and

that Bala was standing behind Rosario. Maribel identified Rosario as the woman who hit her, and Magallon radioed this to O'Brien and Bala without getting out of his car. He drove Maribel to the Fourteenth District police station, where she signed a complaint, and then drove her back to Armitage and Sawyer.

After dropping Maribel off, Magallon returned to the station and found Rosario in a processing room. He told her that she had been arrested for battery and the suspect narcotics transaction. Bala told him that narcotics had been recovered from her belongings. Magallon and Lopez then filled out paperwork to process the arrests of Rosario and Eduardo, who was in an adjacent holding room. Magallon filled out and later filed complaints for both battery and narcotics. At some point, Casey-Martinez searched Rosario. After the search, Casey-Martinez told Magallon that she did not find any drugs on Rosario's person.

Magallon testified at Rosario's preliminary hearing. At the hearing, the narcotics charge against Rosario was dropped upon a finding of no probable cause. Magallon later testified at his deposition that Rosario could not be charged with battery because the arresting officers did not include the battery in the arrest report.

### Discussion

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). A court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmoving

party must offer something more than a 'scintilla' of evidence to overcome summary judgment . . . and must do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Roger Whitmore's Auto. Servs. v. Lake County*, 424 F.3d 659, 667 (7th Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Rosario has asserted claims against the individual defendants under 42 U.S.C. § 1983 for wrongful arrest and failure to intervene. She has asserted state-law claims against all defendants for battery, abuse of process, malicious prosecution, and intentional infliction of emotional distress.

At the outset, the Court notes that Rosario's complaint contains no allegations of misbehavior by Elaine Vabakos, the officer who handled Rosario's overnight stay. Rosario agreed at her deposition that Vabakos did not do "anything inappropriate to [her]" and "act[ed] professionally at all times." Rosario Dep. at 72:6-10. She also admitted that "Vabakos did not touch Plaintiff, and was never present in the 14th District." Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 32. Rosario's brief and statement of uncontested facts do not mention Vabakos by name. Her response to defendants' statement of facts suggests that "Officer Vabakos was made aware of plaintiff's complaints of misconduct by the other officers" and failed to report them. *Id*. ¶ 43. Rosario cites to no evidence, however, that indicates that this is true, nor does she provide any argument that this would provide a basis to hold Vabakos liable. The Court concludes that Vabakos is entitled to summary judgment on all claims.

Similarly, Rosario's only allegations of misconduct by Crawford are that he failed to report Rosario's alleged mistreatment when he took her fingerprints after she was

taken out of the holding room.  She offers no argument or evidence that Crawford was involved in any of the alleged misconduct, had the opportunity to do anything about it while it was occurring, or can be held liable on any of her claims based on his alleged failure to report.  The Court therefore concludes that Crawford is entitled to summary judgment on all claims.

## 1. False arrest

Rosario claims that the "defendant officers used excessive and unreasonable force during the arrest of the plaintiff, an arrest which occurred without probable cause." Compl. ¶ 22.  Defendants acknowledge that this phrasing indicates that Rosario appears to assert two separate claims in count one of her complaint:  a claim of arrest without probable cause and a claim of excessive force.  Defendants argue, and Rosario concedes, that all defendants except Magallon are entitled to summary judgment on the claim of excessive force.  The Court accordingly grants summary judgment in favor of all defendants except Magallon on the portion of count one in which Rosario asserts a claim of excessive force.  The Court therefore turns to Rosario's contention that the officers did not have probable cause to arrest her.

### a. Magallon

Magallon asserts that he cannot be held liable for false arrest because there was probable cause to arrest Rosario.  "The actual existence of *any* probable cause to arrest precludes a § 1983 suit for false arrest."  *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 762 (7th Cir. 2006) (emphasis in original).  "Probable cause to arrest requires an arresting officer to possess knowledge from reasonably trustworthy information that would lead a prudent person to believe that a suspect has committed a crime."  *United*

*States v. McCauley*, 659 F.3d 645, 649 (7th Cir. 2011) (internal quotations and citation omitted).

In addition to being hotly disputed, the circumstances leading to Rosario's arrest and criminal charge are somewhat complicated by the fact that there were two alleged crimes at issue: battery and possession of a controlled substance with intent to distribute. Although Rosario was ultimately charged only with the narcotics offense, defendants have not argued for purposes of this motion that there was probable cause to arrest her for it. Rather, their arguments focus on the alleged battery. Both alleged crimes are relevant to the issue of probable cause, however, because "if an officer has probable cause to arrest a suspect for any crime, there is no Fourth Amendment violation even if the officer lacked probable cause with respect to the actual offense charged." *Brooks v. City of Aurora*, 653 F.3d 478, 485 (7th Cir. 2011) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004)). Whether Magallon had probable cause to believe that Rosario was guilty of a narcotics offense is also relevant to some of Rosario's other claims. The Court therefore examines whether there was probable cause to arrest Rosario for either offense.

Defendants argue that Magallon had probable cause to arrest Rosario for battery because Maribel told them that Rosario had hit her in the face. "When an officer receives information from a third party whom it seems reasonable to believe is telling the truth, the officer has probable cause to effectuate an arrest." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 302 (7th Cir. 2011). Rosario does not contest that Maribel complained to the officers. She argues, however, that it was unreasonable for the officers to believe Maribel because it was a high-crime area, Maribel had an arrest

history, and she had used drugs that day.

The Court need not resolve the question of whether a complaint from Maribel would have, by itself, provided probable cause for Rosario's arrest.  Both Magallon and Lopez testified that they saw the events.  Specifically, they say they actually observed Rosario hit Maribel in the face.  Rosario testified, however, that she did not touch Maribel during their confrontation.  A reasonable jury could believe Rosario's version and conclude that there was no battery.  The same reasonable jury could believe that the officers saw the events and therefore *knew* there had been no battery, even though Maribel later told them that Rosario had hit her.  Given that plausible scenario, a reasonable jury could find the officers lacked probable cause despite Maribel's report.

On the narcotics charge, the officers' testimony reflects two potential bases for probable cause:  the officers claim they received information from an anonymous third party, and they claim they themselves witnessed criminal behavior.  Again, however, a reasonable jury that believed Rosario's story could conclude that the officers did not witness anything that looked like a narcotics transaction because no such events occurred – according to Rosario, the only thing she did after leaving the restaurant and before driving away was to engage in a verbal altercation with Maribel.  And an anonymous tip, without more, does not provide an officer with justification even to conduct a stop and frisk, which requires only reasonable suspicion, a lower threshold than probable cause.  *United States v. Bullock*, 623 F.3d 1004, 1012 (7th Cir. 2011).  A reasonable jury could therefore find that Magallon lacked probable cause to believe that Rosario had committed a narcotics offense.

Magallon argues in his reply brief that he is entitled to qualified immunity on the

question of probable cause.  He did not assert this defense in his summary judgment motion or his opening brief.  For this reason, he has forfeited the point.  *United States v. Adamson*, 441 F.3d 513, 521 n.2 (7th Cir. 2006).  Even if this were not the case, Magallon would not be entitled to qualified immunity on the arrest for battery because, as the Court has explained, the question of arguable probable cause – the qualified immunity standard – turns on genuinely disputed facts.  And on the narcotics charge, the pre-2011 cases that *Bullock* cites would defeat any argument that he is entitled to qualified immunity, because "it is only necessary for the plaintiff to point to a closely analogous case decided prior to the challenged conduct in order to defeat qualified immunity."  *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005) (internal quotation marks and citation omitted).

### b.    The remaining officers

The officers other than Magallon argue that they are entitled to summary judgment on Rosario's false arrest claim because they did not arrest her.  Rosario has provided no argument or evidence that contradicts Casey-Martinez's contention that she did not participate in the arrest.  The Court accordingly grants summary judgment on count one in her favor.

The facts regarding the involvement of Lopez, O'Brien, and Bala in Rosario's arrest are contested.  Defendants argue that they are entitled to summary judgment because the applicable standard requires the Court to accept Rosario's version of the events.  This is incorrect:  the Seventh Circuit has held that the requirement that a court "accept the facts most favorable to the non-moving party" applies even when "the facts that favor [plaintiff] are, paradoxically, those pronounced by . . . the defendants."

*Pourghoraishi*, 449 F.3d at 762.

Defendants also note that an individual can be liable in a section 1983 action only if he or she "cause or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). They argue that because only Magallon is alleged to have put handcuffs on Rosario, only he can be liable for her arrest. This is also incorrect: the Seventh Circuit has allowed for the possibility of holding multiple officers liable for false arrest, so long as that each "under[took] some action prior to, or perhaps at the time of, [the arresting officer's] order to arrest . . . in order to have 'caused' or 'participated' in it." *Jenkins v. Keating*, 147 F.3d 577, 583-84 (7th Cir. 1998) (citing *Wolf-Lillie*, 699 F.2d at 869).

The record supports the proposition that Magallon and Lopez acted jointly throughout the events at issue in this case: both testified that they rode in the same car and witnessed the same events leading up to Rosario's arrest. A reasonable jury could infer that Lopez had the same information as Magallon regarding probable cause and that he "caused" or "participated" in the arrest along with Magallon even if he did not personally handcuff Rosario. *See Maltby v. Winston*, 36 F.3d 548, 559 (7th Cir. 1994) ("[A]n official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.").

There is no evidence, however, that Bala and O'Brien became involved in Rosario's arrest other than through information they received from Magallon. A jury that found that Magallon lacked probable cause to arrest Rosario could hold him liable even

if, as he testified, he never got out of his police car, because his act of telling Bala and O'Brien to arrest Rosario "caused" her arrest. There is no indication, however, that Bala and O'Brien knew or could have known that Magallon did not have probable cause – only that they were following his directions. "The police who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer." *United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005) (internal quotation marks and citation omitted). There is no evidence from which a reasonable jury could conclude that it was unreasonable for Bala and O'Brien to rely on the information they received from Magallon.

In sum, the Court grants summary judgment in favor of all defendants except Magallon on the portion of count one in which Rosario asserts a claim of excessive force. The Court grants summary judgment in favor of defendants Casey-Martinez, O'Brien, and Bala, but not in favor of Magallon and Lopez, on the portion of count one in which Rosario asserts a claim of false arrest.

## 2.    Failure to intervene

Rosario asserts that defendants failed to intervene when her constitutional rights were violated, first by Casey-Martinez's strip search and second by Magallon's alleged beating in the processing room. An officer can be held liable under section 1983 for failure to intervene if the officer "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009).

a.    **Strip search**

To succeed on her claim that officers failed to intervene to stop her
unconstitutional strip search, Rosario must, of course, establish that the search was
unconstitutional.  Although she argues this point under the heading of a failure-to-
intervene claim, her assertion of the claim against Casey-Martinez – the officer who
actually performed the search, and who therefore could not have "intervened" –
indicates that she is making a claim that the search itself violated her rights.  The Court
will therefore consider this issue in addition to Rosario's arguments about the other
officers' opportunity to intervene.

The Seventh Circuit has noted that "strip searches involving visual inspection of
the genital areas are 'demeaning, dehumanizing, undignified, humiliating, terrifying,
unpleasant, embarrassing, repulsive, signifying degradation and submission . . . ."
*Kraushaar v. Flanigan*, 45 F.3d 1040, 1045 (7th Cir. 1995) (quoting *Mary Beth G. v. City
of Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983)).  The court has, however, determined
that a body cavity search can be constitutional if it occurs incident to an arrest, so long
as it is based on the need to protect an officer's safety or preserve evidence for trial.
*Campbell v. Miller*, 499 F.3d 711, 716 (7th Cir. 2007) (citing *Knowles v. Iowa*, 525 U.S.
113, 116, 119 (1998)).

To conduct a strip search under the second of these rationales, "the police
needed to have a reasonable suspicion that [an arrestee] was concealing contraband."
*Id*. at 717.  Narcotics possession "is the kind of crime that might give rise to a
reasonable belief that [an arrestee] was concealing an item in a body cavity."  *Id*. at 718.
The court in *Campbell* noted, however, that "that alone may not be enough to justify a

13

strip search" without additional indicia that allow an officer to "infer that [an arrestee] was still hiding something." *Id.* The Seventh Circuit has also stated that "particularized suspicion may arise from such factors as the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record." *United States v. Logan*, 219 Fed. Appx. 533, 535 (7th Cir. 2007) (citing *Kraushaar*, 45 F.3d at 1045).

After briefing in this case was completed, the Supreme Court issued a decision that addresses strip searches in the context of a general-population jail. In *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 132 S. Ct. 1510, 1513 (2012), the Court held that a policy requiring "every detainee who will be admitted to the general population [of a detention facility] to undergo a close visual inspection while undressed" does not violate the Fourth Amendment. In a portion of the opinion joined by four Justices, Justice Kennedy stated that the Court was not deciding what searches would be reasonable in cases where "a detainee will be held without assignment to the general jail population and without substantial contact with other detainees." *Id.* at 1522. Although the Seventh Circuit has not yet provided guidance regarding the effect of *Florence* on its jurisprudence in this area, the Court concludes that *Florence* does not necessarily foreclose Rosario's claim that her search was unconstitutional. Although the record does not clearly specify the type of facility in which she was held overnight, there is no unambiguous indication that she was introduced to any facility's "general population."

Because the Seventh Circuit requires officers conducting a strip search incident to arrest to have at least reasonable suspicion that an arrestee possesses contraband, Magallon and Lopez are not entitled to summary judgment on this claim. As the Court

14

has explained, a reasonable jury could conclude that the officers knew that there was no probable cause for the narcotics offense and therefore no reason to believe Rosario had contraband on her person. A reasonable jury likewise could conclude that, knowing this, officers Magallon and Lopez should have intervened to stop Rosario's suspicionless strip search.

There is no indication, however, that Casey-Martinez knew or could have known that there was no probable cause for the narcotics offense. As with the involvement of Bala and O'Brien in Rosario's arrest, Casey-Martinez's information appears to have come solely from Magallon and Lopez. There is no evidence from which a reasonable jury could conclude that Casey-Martinez lacked reasonable suspicion on which to base the search. She is therefore entitled to summary judgment on that aspect of the claim. For the same reasons that applied in count one, so are Bala and O'Brien.

Rosario also argues that Casey-Martinez conducted the search in an unconstitutional manner, primarily because she allegedly asked Rosario to "bend over repeatedly" and directed her to remove her tampon. Casey-Martinez also testified that she was not allowed to perform searches without a search warrant, although Rosario does not argue that this affected the search's constitutionality. The Seventh Circuit has noted that factors including privacy, briefness of exposure, the presence of only one officer of the same sex, a lack of touching, and a lack of rude treatment indicate that a search is conducted in a reasonable manner. *Stanley v. Henson*, 337 F.3d 961, 965 (7th Cir. 2003). Although the court in *Stanley* also noted that the search at issue in that case was reasonable partly because the arrestee, unlike Rosario, did not have to disrobe completely, the absence of that factor, without more, does not render a search

unconstitutional.

As defendants point out, the record does not support the contention in Rosario's brief that she was asked to "bend over repeatedly." Instead, Rosario's only allegation supporting her contention that the search was conducted in an impermissible manner is her claim that she was asked to remove her tampon. The Court concludes that, without more, this allegation does not provide sufficient evidence for a reasonable jury to find that the search was conducted in an unconstitutional manner. "The Court is mindful that [Rosario] was embarrassed and humiliated by the process and her embarrassment was compounded because she had her menstrual period at the time of the strip search." *Collins v. Knox County*, 569 F. Supp. 2d 269, 281 (D. Me. 2009). "Without discounting or minimizing [Rosario's] understandable and genuine emotional reaction, that reaction does not determine the constitutionality of the search." *Id.*

For these reasons, the Court grants summary judgment in favor of Casey-Martinez, O'Brien, and Bala on the portion of count two that concerns Rosario's strip search, but not in favor of Magallon and Lopez. The claim that these officers failed to intervene – or perhaps more accurately, that they caused another officer to conduct a strip search without the necessary justification – remains for trial.

### b. Excessive force

Defendants argue that they are entitled to summary judgment on Rosario's claim that they failed to intervene against the use of excessive force because none of them had the opportunity to do so. Although the record does not conclusively indicate the length of the beating, there is no evidence from which a reasonable jury could conclude that the events alleged – Magallon grabbing Rosario's arms, flinging her to the bench,

and slapping her in the face – took more than a few seconds. Even if, as Rosario contends, other officers were outside the room and were able to hear her reaction, no reasonable jury could conclude that they had the opportunity to enter the room and stop Magallon.

Defendants also argue that the beating was over so quickly that even Lopez, who was in the room at the time, could not have intervened. A reasonable jury could conclude, however, that Lopez had the opportunity to take some action – at the very least, to "caution" Magallon "to stop." *See Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005).

For these reasons, the Court grants summary judgment on the excessive force portion of count two in favor of Bala, O'Brien, Casey-Martinez, and Magallon, but not in favor of Lopez.[2]

### 3. Battery

Defendants argue that all officers except Magallon are entitled to summary judgment on Rosario's claim of battery because she identified only Magallon as the officer who battered her. Rosario's battery claim is based not on Magallon's alleged treatment of her at the police station but on her contention that she was groped by the officer who patted her down before she was handcuffed. The Court acknowledges that Rosario testified that she was arrested by Magallon. As the Court explained in connection with Rosario's false arrest claim, however, the facts regarding which officers

---

[2]Magallon is entitled to summary judgment on this claim because he cannot be said to have failed to intervene in what Rosario contends was his own conduct. In any event, his involvement with the alleged excessive force is accounted for in count one.

handcuffed her or otherwise participated in her arrest are contested. A reasonable jury could believe Rosario's claim that she was groped but likewise could believe Magallon's contention that he and Lopez never left their vehicle during the arrest and that Bala, not Magallon, handcuffed and groped her. (Both O'Brien and Magallon testified that Bala, rather than O'Brien, handcuffed Rosario.) It would not be unreasonable for a jury to conclude that confusion caused by the arrest prevented Rosario from accurately identifying the arresting officer. There is no evidence, however, from which a reasonable jury could conclude that any of the defendants other than Magallon or Bala was the officer who handcuffed and groped Rosario. The Court therefore grants summary judgment on count three in favor of Casey-Martinez, O'Brien, and Lopez, but not in favor of Magallon or Bala.

**4.      Abuse of process**

Rosario contends that defendants' contributions to her prosecution included "intentional fabrication or production of sham evidence" and that their "filing of criminal charges was designed to justify [their] unlawful prior actions" of arresting and searching her. Pl.'s Resp. at 12. Defendants argue that they are entitled to summary judgment because Rosario has not actually alleged improper use of court process.

Under Illinois law, the elements of abuse of process are "(1) some act in the use of legal process that is not proper in the regular course of proceedings; and (2) the existence of an ulterior purpose or motive." *Holly v. Boudreau*, 103 Fed. Appx. 36, 39 (7th Cir. 2004) (citing *Neurosurgery and Spine Surgery, S.C. v. Goldman*, 339 Ill. App. 3d 177, 183, 790 N.E.2d 925, 929 (2003)). "[A]buse of process is the bringing of a suit that may . . . have a solid grounding in the law but that the plaintiff has filed not in order

to vindicate his legal rights and obtain a judgment but in order to harass the defendant." *Smart v. Bd. of Trustees of Univ. of Ill.*, 34 F.3d 432, 434 (7th Cir. 1994). "Unlike malicious prosecution, which involves filing a baseless suit to harass or intimidate an antagonist, abuse of process is use of the litigation process for an improper purpose, whether or not the claim is colorable." *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 963 (7th Cir. 2010).

Rosario's contention that defendants "pressed forward with a weak or groundless prosecution . . . really amounts to a malicious-prosecution claim." *Holly*, 103 Fed. Appx. at 39. Although she contends that defendants lied in order to pursue charges against her, Illinois courts have held that if a litigant's action – here, proceeding with the charges – is "proper in the regular prosecution of the proceedings, . . . [t]he fact that the representations made to the court were allegedly false" does not render them an abuse of process. *Erlich v. Lopin-Erlich*, 195 Ill. App. 3d 537, 539, 553 N.E.2d 21, 22 (1990).

The Court concludes that Rosario has not alleged that defendants committed the tort of abuse of process under Illinois law and grants summary judgment in favor of all defendants on count four.

### 5. Malicious prosecution

To recover for malicious prosecution, Rosario must show "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (1996) (internal quotation marks and citation omitted). Defendants argue that all officers

except Magallon are entitled to summary judgment on this claim because only Magallon is alleged to have signed the criminal complaint against her. Rosario argues that Lopez, O'Brien, and Bala are not entitled to summary judgment because O'Brien "clerked" the criminal complaints and O'Brien and Bala completed a tow report that caused her to have to retrieve her car from an impound lot.

There is no evidence from which a reasonable jury could conclude that O'Brien or Bala shared Magallon's alleged knowledge that there was no probable cause for the proceeding. They are therefore entitled to summary judgment. Finally, there is no evidence from which a reasonable jury could find that Lopez was involved in any of the events after Rosario's arrest that led to her prosecution.

The Court therefore grants summary judgment on count five in favor of all defendants other than Magallon.

## 6.    Intentional infliction of emotional distress

Rosario contends that she has suffered from severe emotional distress based on her treatment at the police station, and that as a result she fears the police, has trouble sleeping, no longer feels safe, and avoids Chicago neighborhoods where she believes that she might encounter Magallon. To succeed on her claim of intentional infliction of emotional distress, Rosario must establish that the officers' "conduct was extreme and outrageous"; they "knew that there was a high probability that [their actions] would cause [her] severe emotional distress"; and their actions "in fact caused . . . severe emotional distress." *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010). "An important factor in this analysis is whether a defendant abused a position of authority." *Id.* "Allegations that a state official fabricated false or misleading evidence of guilt . . . would

be sufficiently 'outrageous' to support an IIED claim." *Fox v. Tomczak*, No. 04 C 7309, 2006 WL 1157466, at *6 (N.D. Ill. Apr. 26, 2006).

Defendants argue primarily that the alleged effects of Rosario's arrest do not rise to the level of severe distress required under Illinois law. The Seventh Circuit has noted, however, that "[a] strong showing on the first two factors [can] compensate[] for the weakness of the evidence with respect to the third." *Id.* The Court concludes that a reasonable jury could find that Rosario suffered emotional distress from defendants' alleged actions that is sufficiently severe to support her claim. Because Rosario's claim of severe distress depends on her allegations that she was arrested and searched without probable cause and beaten while being held, the Court concludes that Magallon and Lopez – who, as the Court noted above, are the only officers whom a reasonable jury could find responsible for these matters – are not entitled to summary judgment on this claim. The Court, however, grants summary judgment in favor of Casey-Martinez, Bala, and O'Brien.

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment in part and denies it in part [docket no. 23]. Summary judgment is granted in favor of defendants Vabakos, Crawford, O'Brien, and Casey-Martinez on all counts; in favor of defendant Bala on all counts except count three; in favor of defendant Lopez on counts three, four, and five; in favor of defendant Magallon on count four and the portion of count two that concerns excessive force; and in favor of defendant City of Chicago on count four. The motion is otherwise denied. The case remains set for a status hearing

21

on April 18, 2012 at 9:30 a.m.

MATTHEW F. KENNELLY
United States District Judge

Date:  April 17, 2012